## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY BANK OF AMERICA MERRILL LYNCH TRUST 2017-C33, | : : : : : : | |
| | : | CIVIL ACTION |
| Plaintiff, | : : | NO. |
| v. | : : | |
| SHREE SAI SIDDHI QUAKERTOWN, LLC, | : : : | |
| Defendant. | : : | |

## COMPLAINT

Plaintiff, Wilmington Trust, National Association, as Trustee for Morgan Stanley Bank of America Merrill Lynch Trust 2017-C33 ("Lender"), acting by and through its special servicer, Midland Loan Services, a division of PNC Bank, National Association ("Midland"), for its complaint in mortgage foreclosure against defendant, Shree Sai Siddhi Quakertown, LLC ("Borrower"), avers as follows:

### I.      PARTIES, JURISDICTION AND VENUE

1.      Lender is a national banking association with its main office, as designated in its Articles of Association, located in Wilmington, Delaware.  Non-party Midland is the special servicer for Lender with respect to the Loan (as defined below).

2.      Borrower is a Pennsylvania limited liability company with an address c/o 1650 Market Street, 36th Floor, Philadelphia, Pennsylvania 19103.  Upon information and belief, none of Borrower's members is a citizen of the State of Delaware.

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is controversy exceeds $75,000 and the action is between citizens of different states.

4.      Venue exists in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) because the real property that is the subject of this action is situated in this district.

## II.      FACTS

### A.      The Original Loan Transaction

5.      On or about April 10, 2017, Morgan Stanley Bank, N.A. ("Original Lender") issued to Borrower a commercial mortgage loan in the principal amount of $6,231,000 (the "Loan").

6.      The Loan is evidenced by a Promissory Note dated April 10, 2017, executed by Borrower in favor of Original Lender in the principal amount of $6,231,000 (the "Note"), a copy of which is attached hereto as Exhibit A.

7.      To secure repayment on the Note, Borrower executed in favor of Original Lender an Open-End Mortgage and Security Agreement effective as of April 10, 2017 (the "Mortgage"), with respect to real and other property located at 1918 John Fries Highway in Quakertown, Pennsylvania.  A copy of the Mortgage is attached hereto as Exhibit B.  The Mortgage was recorded with the Bucks County Recorder of Deeds (the "Recorder") on April 18, 2017, as Instrument No. 2017022150.  The Note, the Mortgage and various other documents executed by Borrower in favor of Original Lender with respect to the Loan are collectively referred to herein as the "Loan Documents."

### B.      The First Assignment of the Loan

8.      Original Lender subsequently assigned the Loan to Morgan Stanley Mortgage Capital Holdings LLC, ("First Assignee") (the "First Loan Assignment") pursuant to a Replacement General Assignment, a copy of which is attached hereto as Exhibit C.

9.      In connection with its assignment of the Loan, Original Lender executed for the benefit of First Assignee a Replacement Allonge to the Note, a copy of which is attached hereto as Exhibit D.

10.      Also in connection with the First Loan Assignment, Original Lender executed in favor of First Assignee an Assignment of Open-End Mortgage and Security Agreement, a copy of which is attached hereto as Exhibit E, which was recorded with the Recorder on July 21, 2017, as Instrument No. 2017043518.

C.      **The Second Assignment of the Loan**

11.      The Loan was subsequently securitized and assigned by First Assignee to Lender (the "Second Loan Assignment") pursuant to a Replacement General Assignment, a copy of which is attached hereto as Exhibit F.

12.      In connection with the Second Loan Assignment, First Assignee executed for the benefit of Lender a Replacement Allonge to the Note, a copy of which is attached hereto as Exhibit G.

13.      Also in connection with the Second Loan Assignment, First Assignee executed in favor of Lender an Assignment of Open-End Mortgage and Security Agreement, a copy of which is attached hereto as Exhibit H, which was recorded with the Recorder on July 21, 2017, as Instrument No. 2017043521.

D.      **Relevant Contractual Provisions**

14.      The Mortgage secures, *inter alia*, the Debt (as defined in the Mortgage) owed by Borrower under the Note and the other Loan Documents.  (*See* Mortgage Art. II.)

15.      Borrower is the owner of the real property located at located at 1918 John Fries Highway in Quakertown, Pennsylvania, as more fully described in Exhibit "A" to the

Mortgage (the "Land"), which, together with the Improvements thereon as defined in the Mortgage, has been operated at all relevant times as the Holiday Inn Express Quakertown.

16.     The Mortgage creates a first priority lien on and security interest in all of Borrower's right, title and interest in and to the Land and the Improvements, together with all other real and personal property owned by Borrower and collectively defined in the Mortgage as the "Property." (Mortgage Art. I.)

17.     The Note requires that Borrower make, *inter alia*, "a constant payment of $32,466.30 on the first (1st) day of June, 2017 and on the first (1st) day of each calendar month thereafter up to and including the first (1st) day of April, 2027." (Note Art. I.)

18.     The Mortgage requires that "Borrower shall pay to Lender on the first (1st) day of each calendar month (a) one-twelfth of an amount which would be sufficient to pay the Taxes payable, or estimated by Lender to be payable, during the next ensuing twelve (12) months and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof." (Mortgage § 3.5.)

19.     The Mortgage provides that an Event of Default will be deemed to have occurred if, *inter alia*, Borrower fails to "pay within five (5) days when due (A) any monthly installment of principal and/or interest due under the Note and any amount required to be paid into any reserve funds or (B) any other sums payable under the Note, this [Mortgage] or the other Loan Documents." (Mortgage § 10.1(a)(ii).)

20.     The Note provides that, "upon the occurrence of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a per annum rate equal to the lesser of (a) five percent (5%) plus the Applicable Interest

Rate [of 4.74% per annum] or (b) the maximum interest rate which Borrower may by law pay (the

'Default Rate')."  (Note Art. IV and Art. II.)

21.     The Note further provides that:

If any monthly installment payable under this Note is not paid within five (5) days following the date such payment is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of five percent (5%) of such unpaid sum or the maximum amount permitted by applicable law to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss of the use of the delinquent payment and the amount shall be secured by the Security Instrument and the other Loan Documents.

(Note Art. V.)

22.     The Note also provides for the payment of "Default Consideration" as

follows:

If a Default Prepayment (defined below) occurs, Borrower shall pay to Lender the entire Debt, including, without limitation, an amount (the "Default Consideration") equal to three percent (3%) of the Default Prepayment.  For purposes of this Note, the term "Default Prepayment" shall mean a prepayment of all or any portion of the principal amount of this Note made concurrently with or after the occurrence of any Event of Default or an acceleration of the Maturity Date under any circumstances, including, without limitation, a prepayment occurring in connection with reinstatement of the Security Instrument provided by statute under foreclosure proceedings or exercise of a power of sale, any statutory right of redemption exercised by Borrower or any other party having a statutory right to redeem or prevent foreclosure, any sale in foreclosure or under exercise of a power of sale or otherwise.

(Note Art. VI(h).)

23.     Additionally, the Note provides that:

Wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, any fees paid to any special servicers of the Note and all legal fees and disbursements of Lender, whether with respect to retained firms, the reimbursement for the expenses of in-house staff, or otherwise.  Borrower shall pay to Lender on demand any and all expenses, including legal expenses and reasonable attorneys' fees and including, without limitation, loan servicing or special servicing fees, loan advances, and "work-out" and/or liquidation fees, incurred or paid by Lender in enforcing this Note, whether or not any legal proceeding is commenced hereunder, together with

interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

(Note Art. XVIII(a).)

24.    The Mortgage provides:

Borrower shall pay to Lender on demand any and all expenses, including legal expenses and attorneys' fees, incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable hereunder or in enforcing its rights hereunder with respect to the Property, whether or not any legal proceeding is commenced hereunder or thereunder, together with interest at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

(Mortgage § 19.2.)

25.    The Mortgage also provides that, "[u]pon the occurrence of any Event of Default," Lender may, *inter alia*, "declare the entire unpaid Debt to be immediately due and payable" and "institute proceedings . . . for the complete foreclosure of this [Mortgage] under any applicable provision of law."  (Mortgage §§ 11.1(a)-(b); *see also* Note Art. III (Default and Acceleration).)

### E.    Borrower's Default on its Obligations

26.    Beginning in April 2020, Borrower failed to pay to Lender within five days or at any other time the required monthly principal and interest payments and escrow deposits.

27.    Borrower's failure to make the required monthly payments constitutes an Event of Default under Loan Documents.  (*See* Mortgage § 10.1(a)(ii).)

28.    Lender, through Midland, provided a Notice of Default and Intent of Foreclosure by letter dated July 24, 2020 (the "Notice of Default"), a copy of which is attached hereto as Exhibit I, which advised Borrower that "[y]ou are in default under the Loan Documents for failure to pay the April 01, 2020 and subsequent monthly principal and interest payments as well as the escrow installments, late charges, property protection advances, default interest, Special

6

Servicing fees, interest on advances, and other costs and expenses incurred by the Lender as a result of the default." (Notice of Default at 1.)

29.     The Notice of Default further advised Borrower that it had 10 days to cure its default and that "[f]ailure to cure the default as noticed by August 03, 2020 will result in Midland, on behalf of the Lender, pursuing all remedies available under the Loan Documents, including accelerating of the balance of Note, foreclosure of the Property and/or the appointment of a receiver." (Notice of Default at 2.)

30.     Notwithstanding the Notice of Default, Borrower failed to cure the ongoing Event of Default.

31.     Lender, through its counsel, provided a Notice of Acceleration to Borrower by letter dated September 10, 2020 (the "Notice of Acceleration"), a copy of which is attached hereto as Exhibit J, which advised Borrower that "AS OF THE DATE HEREOF, THE DEFAULT IDENTIFIED IN THE NOTICE OF DEFAULT HAS NOT BEEN CURED BY BORROWER AND IS CONTINUING." (Notice of Acceleration at 2.)

32.     The Notice of Acceleration further advised Borrower that:

AS A RESULT OF THE OCCURRENCE AND CONTINUANCE OF THE DEFAULT DESCRIBED IN THE NOTICE OF DEFAULT, (A) THE DEBT SECURED BY THE MORTGAGE IS HEREBY ACCELERATED AND DECLARED TO BE IMMEDIATELY DUE AND PAYABLE, (B) DEMAND IS HEREBY MADE OF BORROWER FOR THE IMMEDIATE AND FULL PAYMENT OF THE DEBT, AND (C) INTEREST WILL CONTINUE TO ACCRUE AT THE DEFAULT RATE UNTIL THE DEBT IS PAID IN FULL.

 (Notice of Acceleration at 2.)

33.     To date, Borrower has failed to pay the Debt in full or otherwise cure the ongoing Event of Default.

34.     Accordingly, Lender brings this action to foreclose the Mortgage.

**F.      Lender's Damages**

35.      The following amounts are due and owing by Borrower under the Note and the Mortgage as of September 1, 2020, without defense, deduction, offset, recoupment, or counterclaim:

| | |
|---|---|
| Principal Balance | $5,958,765.60 |
| Interest (3/1/20-8/31/20) | 144,361.03 |
| Default Interest (4/1/20-8/31/20) | 126,623.77 |
| Late Fees | 8,116.60 |
| Interest on Advances | 1,806.53 |
| NSF Fee | 50.00 |
| Special Servicing Fees | 7,000.00 |
| Liquidation Fee | 62,422.04 |
| Tax and Insurance Advances | 20,411.08 |
| Default Consideration | 178,762.97 |
| Payoff Processing Fee | 400.00 |
| (*Less Credit for Insurance Balance* | *649.10*) |
| (*Less Credit for Reserve Balance* | *203,444.16*) |
| TOTAL AMOUNT DUE a/o 9/1/20 | $6,304,626.36 |

36.      Additional interest and default interest, together with other fees, charges and costs recoverable under the Loan Documents, have continued and continue to accrue on the Loan since September 1, 2020.

**COUNT ONE – MORTGAGE FORECLOSURE**

37.      Paragraphs 1 through 36 of this Complaint are incorporated herein by reference.

38.     Borrower executed the Note, which is secured by the Mortgage, in favor of Lender.

39.     Borrower has defaulted on its obligations under the Note, the Mortgage and the other Loan Documents.

40.     Lender is authorized by the Mortgage and by Pennsylvania law to foreclose the Mortgage in the event of a default by Borrower.

41.     There is currently due and owing on the Loan the sum of $6,304,626.36, together with accruing default interest, fees, charges and costs recoverable under the Loan Documents.

WHEREFORE, Lender asks that a judgment in mortgage foreclosure be entered in its favor and against Borrower in the amount of $6,304,626.36, together with additional accrued and accruing interest (at the Default Rate), fees, charges and costs recoverable under the Loan Documents, and that Lender be awarded such other and further relief as the Court in its discretion may deem equitable and just.

Dated:  October 26, 2020

_Raymond Broder_
Raymond A. Quaglia, PA ID No. 63146
Rachel H. Broder, PA ID No. 322742
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
(215) 665-8500
quaglia@ballardspahr.com
broderr@ballardspahr.com

Counsel for Plaintiff